Filed 3/16/22  In re Gabriel G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re GABRIEL G., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. SAMANTHA A., Defendant and Appellant. | F083360 (Super. Ct. No. 516197) **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Lindy GiacopuzziRotz, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Samantha A. (mother) appeals from the juvenile court's order summarily denying her Welfare and Institutions Code[1] section 388 petition. Mother's son, Gabriel G., has been the subject of a juvenile dependency case since 2011 when he was 10 months old. At the permanency planning hearing (§ 366.26), the juvenile court ordered a permanent plan of legal guardianship with his paternal grandparents. In 2021, mother petitioned the court to terminate the legal guardianship, alleging that circumstances had changed in that mother had moved out of state and the proposed order was in Gabriel's best interests because she wanted to transition him to living in her care full time. We affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the Stanislaus County Community Services Agency (agency) filed a petition on behalf of then 10-month-old Gabriel alleging he came within the juvenile court's jurisdiction under section 300, subdivision (b) (failure to protect). The petition included multiple factual allegations supporting the agency's contention Gabriel had been harmed or was at risk of harm, including the parents used heroin in his presence, he fell out of bed while co-sleeping, mother breastfed him while under the influence of heroin, the parents engaged in domestic violence while Gabriel was in mother's arms, and the parents were homeless.

In January 2012, the juvenile court sustained the 2011 petition and adjudged Gabriel a dependent of the court. The parents participated in family reunification services, and in May 2013, Gabriel was released to his parents' custody on family maintenance services.

In October 2013, the agency filed a supplemental petition pursuant to section 387, alleging Gabriel's placement in the parents' home had not been effective in protecting

---

[1] All further statutory references are to the Welfare and Institutions Code.

him.  The petition alleged the parents had tested positive for morphine and opiates and further they had admitted to smoking heroin.

On October 29, 2013, the court found a prima facie showing had been made that Gabriel was described by section 387 and ordered Gabriel detained from his parents.  In November 2013, Gabriel was placed with his paternal grandparents.  At the jurisdiction hearing on January 30, 2014, the court sustained the section 387 petition with minor amendments.

At the disposition hearing on March 7, 2014, the juvenile court ordered that Gabriel would continue as a dependent of the court.  The court found that the parents' progress had been fair but because of the length of time they had received family reunification services and maintenance services, it had no option but to deny further reunification services to the parents.  The court set a section 366.26 hearing, uncontested as "everyone is of the understanding that the intent at this point would be to establish a legal guardianship as opposed to termination of parental rights."[2]  Nonetheless, the agency prepared a section 366.26 report recommending adoption with Gabriel's care providers as his permanent plan and that parental rights be terminated.

At the section 366.26 hearing on July 25, 2014, however, the agency changed its recommendation to legal guardianship and indicated Gabriel's care providers were not willing to adopt him.  The court ordered guardianship with Gabriel's care providers as the permanent plan, finding they were relatives who were unable or unwilling to adopt Gabriel for reasons that did not include an unwillingness to accept legal or financial responsibility for him and were willing and capable of providing him with a stable and permanent environment through legal guardianship (§ 366.26, subd. (c)(1)(B)(iv)).  The parents were ordered to have visitation at a minimum of three times per month for two

---

[2]    It appears this was a result of a conversation held off the record; it is unclear from the record why legal guardianship seemed to be the preferred permanent plan at this stage in the proceedings.

hours, supervised by the guardians or other authorized adult, with the guardians having discretion to increase to weekly visits. Visits were to be scheduled per agreement of the parties, but if no agreement could be reached, they were to be held on the first, second, and fourth Saturday of each month. Letters of guardianship were issued on July 29, 2014.

On October 12, 2017, mother filed a section 388 petition requesting the court to change the visitation order. Mother alleged she had a "clean state of mind" and a "sober environment to offer" Gabriel. Mother requested weekend overnight visits for either one or two nights and "mandatory holidays [and] birthdays." Mother further alleged that Gabriel "ha[d] a sibling on the way" and that Gabriel was at an age "where the mother child relationship needs to be repaired."

On November 9, 2017, the court conducted a hearing on whether it should grant or deny an evidentiary hearing on mother's petition. At the hearing, the court reopened dependency "so th[e] matter could be further investigated." The court appointed counsel for the guardians and for mother, and ordered the agency to investigate the matter and update the court at a future hearing.

Pursuant to the court's order, an agency social worker spoke with mother and the paternal grandfather. Mother was residing at a sober living facility and reported being sober since May 17, 2017. Mother had gone to jail twice within six months, and upon her second release in May, she took steps to secure a spot in her residence. She stated she was meeting program requirements and participating in another program called "First Step." She reported being regularly drug tested and all her drug tests had been negative. The social worker observed there was space for Gabriel in mother's room. Mother reported last seeing Gabriel in July 2017 and that the guardians had not allowed her to see him since then except for one visit in August. Mother reported she had trouble getting a hold of and scheduling visits with the guardians. The social worker also spoke with the

director of the residence, who reported mother was doing " 'wonderful' in the program and in the home."

When the paternal grandfather was asked why Gabriel had not seen mother since July 2017, he responded, " 'if we are not home, we can't answer the phone.' " The paternal grandfather stated he refused to assist mother with transportation. Based on the agency's investigation, it recommended that Gabriel be permitted to visit mother once per week on a weekend day for eight hours leading to weekend overnight visitation.

On December 12, 2017, the court indicated the parties had had "some conferencing" off the record and suggested the issues with visits between the guardians and mother arose from there being no agreement on "who is doing what or who is not doing what." The court ordered the following visitation schedule: visits between mother and Gabriel to occur on the first, third, and fourth Saturdays of each month from 10:00 a.m. to 4:00 p.m. The court ordered that mother would be responsible for picking up Gabriel at the beginning of the visit, and the guardians for picking up Gabriel from mother at the end of visits. The court added that Gabriel was entitled to call mother on the telephone.

On November 15, 2018, mother filed a section 388 petition requesting the court order Gabriel to spend summer and Christmas vacations with her. Mother alleged she had moved to Wisconsin and had "obtained stable living and financial responsibility." She contended the guardians agreed her proposal was appropriate and that she wanted Gabriel to "transition slowly into residing" with her.

On December 11, 2018, the court conducted a hearing to determine whether it should grant or deny an evidentiary hearing. Mother was expected to appear for the hearing telephonically but did not appear. The court tried to reach mother at least four times, and her line was busy. The hearing was scheduled at 8:30 a.m., and the court was still unable to reach mother at 10:12 a.m. The court dropped the motion. The court

indicated to the guardians who were present that they were free to make arrangements with mother or could wait to see if she refiled.

On December 31, 2018, mother filed another similar section 388 petition requesting the court order Gabriel to "begin transitioning back" into mother's care and order visits for Christmas and summer vacations. Mother again alleged she had moved to Wisconsin. Mother further alleged that the guardians were reaching "retirement age where their plans always have been to move and live in their native land," and it "would be best to slowly transition [Gabriel] back into my care."

On January 29, 2019, the court conducted a hearing on whether it should grant or deny an evidentiary hearing on mother's petition. Mother again was not present for the hearing, and the court vacated the hearing.

On July 9, 2021, mother filed another section 388 petition, which is the subject of the present appeal. In this petition, mother requested the court to terminate the guardianship, leave Gabriel in the guardians' care, and reopen reunification services "so we can come up with a long term transition plan." As to changed circumstances, mother alleged she had moved out of state and that the guardians had not "showed interest" in mother and Gabriel's relationship but would rather "have it out in court instead of working it out." As for why the request was in Gabriel's best interest, mother alleged, "I believe he needs to remember I am his mother by spending time out here and finally deciding when he is ready or I say it's time, to come live with me."

The court ordered a hearing on whether the court should grant or deny an evidentiary hearing "as to the issue of visitation only." The hearing took place on August 6, 2021. Mother was present. The court told mother she "ha[d not] really explained what circumstances have changed since the last order was made" and asked mother to clarify. Mother replied by saying that she no longer lived in California. The court stated that was "not really a significant change of circumstances as to Gabriel" and

6.

asked mother why it would be in his best interest to change the current orders. Mother responded, "So we have a relationship."

The court asked mother if she was having telephone calls with Gabriel, to which mother responded, "I do as best as I can. We're a two-hour difference." Mother went on to say, "I don't see why it is not in his best interest to have a relationship with me. I don't understand how it's in his best interest to keep him with [his guardians], who are significantly older, not of his parents' age, where his dad is going in and out of his life. I don't see why—I am not—if you read on the paper, I'm specifically saying I am not willing to just snatch him away from where he's at, but I am willing to do this long-term to where it's comfortable and it's a transition that is comfortable for all of us." The court stated it could order telephonic visits and that mother could come out to California to visit with Gabriel. Mother asked why Gabriel could not come to visit her and stated she would pay for it. The court told mother it could make arrangements for mother to come visit Gabriel and asked mother if she wanted to come to California to visit with Gabriel, to which mother responded, "No, no, him come here for the summer." The juvenile court stated it did not think that was in Gabriel's best interest. Mother then asked for a new judge, which the court denied. The court denied an evidentiary hearing on mother's petition and advised mother of her right to file an appeal.

## DISCUSSION

A parent petitioning the court to modify a prior dependency order pursuant to section 388 must show the existence of changed circumstances or new evidence justifying the proposed change and that the proposed change is in the best interests of the child. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A parent need only make a prima facie showing of these elements to trigger the right to an evidentiary hearing, and courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310.) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances

7.

and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review the juvenile court's summary denial of mother's section 388 petition for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial must be upheld unless we can determine from the record that the juvenile court's decision "exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

Here, mother contends she met her burden to warrant an evidentiary hearing because the burden is relatively low, only requiring " 'any' " change of circumstance and that it " '*appear*' " the best interests of the child " '*may*,' " as opposed to "will," be served by a change of the juvenile court's order. We disagree. Applying the somewhat low burden a petitioner must meet and keeping in mind the juvenile court must liberally construe a section 388 petition in favor of its sufficiency, we conclude the juvenile court did not abuse its discretion by finding mother's petition nonetheless failed to make the required showing.

Mother moving out of state and the guardians' "not show[ing] interest in" Gabriel and mother's relationship do not constitute new evidence or changed circumstances justifying mother's request to terminate the guardianship and move towards reunification with Gabriel. First, mother made no allegations as to why the guardianship needed to be

8.

terminated, such as whether Gabriel was unsafe or unhappy with the guardians or that the guardians were somehow unfit. She made no direct allegations that the guardians were blocking her from having contact with Gabriel or not complying with the visitation order nor did she elaborate on what she meant by her statement that they did not "show interest" in their relationship. Rather, mother conceded that placement was appropriate by requesting that Gabriel stay in the guardians' care while she participated in reunification services.

Further, after reunification services have been terminated, to make a showing of changed circumstances, the problem that initially brought the child within the dependency system must be removed or ameliorated. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) The change must be "substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Mother made no allegations as to her current lifestyle or the status of her sobriety. Such allegations were essential to mother's petition as Gabriel was initially removed from mother because of substance abuse and was unable to return to her care because of mother's inability to stay sober despite her participating in substance abuse reunification and maintenance services. Mother made no showing as to why she would benefit from services when her previous services had not helped her to achieve long-term sobriety.

Moreover, mother made no sufficient allegation that the proposed order was in Gabriel's best interest to warrant a hearing on her petition. Mother's allegation as to why her request was in Gabriel's best interest was conclusory and essentially based on her being Gabriel's biological mother. Mother cites no authority that she was entitled to any presumption based on her being Gabriel's biological mother. Rather, after reunification services have been terminated, a parent's interest in the care, custody, and companionship of the child is no longer paramount. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The focus has shifted from family reunification to stability and permanence for the child. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) Accordingly, after a parent fails to reunify

9.

with a child and a permanent plan of guardianship has been ordered, "the court must turn its focus to the child's best interests, rather than the parent's, in deciding issues that may arise." (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1559.) There is a rebuttable presumption that continued out-of-home placement is in the best interest of the child. (*In re Marilyn H.*, at p. 310.)

Mother failed to rebut this presumption. She made no allegations regarding her *current* relationship with Gabriel and why, beyond her being his biological mother, disrupting the stability of his guardianship and moving toward return to her care was in his best interests. At the time mother brought her section 388 petition, Gabriel was 10 years old and had been in his guardians' continuous care for almost eight years, a significant portion of his life. In contrast, he had only spent the first 10 months of his life and another five months when he was very young in mother's care. The visitation order in place was for visits three times per month for six hours per visit; however, at some point prior to November 15, 2018, mother moved out of state to Wisconsin. It is unclear to what extent mother maintained contact with Gabriel after that. In 2018, she twice tried to amend the visitation order to include summer and Christmas vacations, which she alleged the guardians agreed to, but she failed to appear at the hearings associated with both petitions. Mother alleged no facts regarding what efforts she made to stay in Gabriel's life. Finally, mother had already been provided reunification services to the extent allowed by law in Gabriel's dependency case and alleged no facts which supported a conclusion she would benefit from more services. The court could reasonably conclude from the entirety of the record that Gabriel enjoyed a sense of stability and permanence with his guardians and that mother's allegations did not justify disrupting it.

Putting aside mother's request to terminate the guardianship and be provided with reunification services, and focusing solely on her request to have Gabriel travel to visit her in Wisconsin, which is mother's primary focus in this appeal, we emphasize that even when viewing this request separately from the others, for many of the reasons we have

10.

discussed, the juvenile court did not abuse its discretion in its denial. Mother concedes in her briefing "it was her choice to make that move which took her away from her son." Mother goes on to say, "But that choice does not mean that she can't visit with her son; there is no physical or legal reason why Gabriel can't fly to Wisconsin to visit with her in her home." We note the same applies to mother visiting with Gabriel in his home. As we have stated, mother makes no allegations as to what attempts she had made to visit with Gabriel pursuant to the current visitation order nor why even partial compliance with the current visitation order was no longer feasible. At the hearing, mother indicated she was willing to pay for Gabriel to visit her but was not willing to visit him even after the court stated it could make arrangements for that to occur. Mother did not explain any impediments she had to traveling to see Gabriel. Finally, absent allegations regarding mother's safety and sobriety as well as how Gabriel would benefit from such visits when it was unclear what their relationship was like at the time mother brought her petition, the juvenile court's ruling was reasonable.

The juvenile court did not abuse its broad discretion in determining mother had not made the prima facie showing required to justify an evidentiary hearing on her section 388 petition and thus summarily denying her petition.

## DISPOSITION

The juvenile court's August 6, 2021 order summarily denying mother's section 388 petition is affirmed.

DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, ACTING P. J.


FRANSON, J.

11.